IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH VELAZQUEZ,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No.  2:11-cr-0738-CW<br><br>Judge Clark Waddoups |

## INTRODUCTION

Before the court is Defendant's motion to suppress evidence collected during a search of Defendant's car and pursuant to his later arrest.  (Dkt. No. 21.)  For the reasons stated below, the court finds that Defendant has failed to show that any of the evidence at issue was improperly obtained.  Therefore, Defendant's motion to suppress is denied.

## FACTUAL BACKGROUND

The material facts are largely undisputed.  Sergeant Kyle Jeffries is a police officer with Clearfield City.  Tr. 5 (Dkt. No. 42.)  On July 24, 2011, around 1:00 a.m., Sergeant Jeffries was on gang patrol duty near Bogey's, a private club in Clearfield and a known location of violent gang crime in the preceding weeks.  Tr. 8-9.  On this occasion, Sergeant Jeffries saw Defendant walk quickly out of the bar followed by a female, who was grabbing at Defendant.  Tr. 12.  Sergeant Jeffries could hear some yelling and believed the situation was most likely a domestic dispute.  Tr. 13.

Shortly after Defendant had left the bar, Sergeant Jeffries saw another group of three males and two females exit, yelling and following behind Defendant. Tr. 14. Defendant and his female companion headed towards a vehicle parked in a bank parking lot adjacent to the bar and continued to shout at each other. Tr. 13, 15-17. Having concerns that the situation might escalate, Sergeant Jeffries exited his police vehicle and moved closer to Defendant. Tr. 14, 18. Sergeant Jeffries was within 30 feet of Defendant's vehicle when he overheard Defendant's female companion urging Defendant to leave, followed by Defendant saying something to the effect of "I'm going to take care of it." Tr. 18.

Sergeant Jeffries testified at an evidentiary that he then heard a gun rack. Tr. 18. Defendant contends that Sergeant Jeffries' testimony that he heard a gun rack is not credible for the reasons discussed below.

After hearing the gun rack, Sergeant Jeffries intervened in the situation by drawing his handgun, shining his light on Defendant and ordering everyone in the group to show their hands. Tr. 19-20, 32. After the Sergeant gave the order, everyone complied except Defendant who walked to the passenger side of the car and made a motion down into the car. Tr. 20. Sergeant Jeffries again ordered Defendant to show him his hands, at which point Defendant responded, "what, what is going on?" Tr. 20. Sergeant Jeffries then ordered Defendant to come around to the driver's side of the vehicle where the other individuals were located and ordered everyone to keep their hands in sight. Tr. 33. According to Sergeant Jeffries, this exchange took approximately three to five seconds. Tr. 20-21. Sergeant Jeffries then called for backup and put his gun back into the holster once he could see everyone's hands. Tr. 21. The others began to explain what had happened in the bar and Sergeant Jeffries continued to try and diffuse the tension until backup could arrive. Tr. 22.

After backup arrived, Sergeant Jeffries ordered everyone to get on their knees and put their hands on their heads in order to try and ascertain where the gun was located. Tr. 23. Sergeant Jeffries then walked over to the passenger side door of the vehicle, left open by Defendant, where he saw a liquor bottle containing a little bit of alcohol sitting on top of the passenger seat. Tr. 23. Sergeant Jeffries then bent down to look under the seat and, without entering into the car, saw a Glock handgun sticking out from underneath the seat. Tr. 23-24. At this point, Sergeant Jeffries closed the car door to secure the gun and then arrested Defendant. Tr. 24.

Pursuant to the arrest, Sergeant Jefferies conducted a search of Defendant's person and found a small baggie of cocaine. Tr. 25. Sergeant Jeffries then gave Defendant *Miranda* warnings and proceeded to ask Defendant about the events that had transpired. Tr. 25-26. Defendant indicated that he had the gun in his possession for protection. Tr. 26.

Defendant was subsequently indicted by a federal grand jury for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and for possession of cocaine in violation of 18 U.S.C. § 844(a).

## ANALYSIS

Defendant argues that all of the evidence collected by Sergeant Jeffries and other officers on the night of his arrest should be suppressed because it was seized as a result of Defendant's unlawful detention or, alternatively, because its discovery was the fruit of an unlawful search.

To suppress evidence as the fruit of an unlawful detention, a defendant must make two showings: "(1) that the detention did violate his Fourth Amendment rights; and (2) that there is a factual nexus between the illegality and the challenged evidence." *United States v. DeLuca*, 269 F.3d 1128, 1132 (10th Cir. 2001). As it relates to this case, the Fourth Amendment protects

individuals from unreasonable searches and seizures, including unreasonable investigatory stops or detentions.  *See United States v. McHugh*, 639 F.3d 1250, 1255 (10th Cir. 2011).  Speaking of warrantless arrests and the probable cause standard, the Tenth Circuit has stated:

> The constitutional validity of a warrantless arrest depends on whether the arresting officer had probable cause.  Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.  Although it is not necessary that the officer possess knowledge of facts sufficient to establish guilt, mere suspicion is insufficient to establish probable cause. We recognize that probable cause must be evaluated in light of circumstances as they would have appeared to a prudent, cautious, trained police officer.

*United States v. Maher*, 919 F.2d 1482, 1485 (10th Cir. 1990)

The probable cause standard, however, does not control in all circumstances.  In a case requiring "swift action predicated upon the on-the-spot observations of the officer on the beat . . . the conduct involved . . . must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures."  *Terry v. Ohio*, 392 U.S. 1, 20 (1968).  Thus, "police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause."  *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

## I. INITIAL DETENTION

The government argues that Sergeant Jeffries initial detention of Defendant was an investigatory *Terry* detention justified by Sergeant Jeffries' reasonable suspicion that Defendant had engaged in, or was in the process of engaging in, criminal conduct.  Defendant, on the other hand, contends that the government has failed to prove that Sergeant Jeffries' initial detention of

4

Defendant was based on a reasonable suspicion of criminal activity and, therefore, violated the Fourth Amendment.

The Tenth Circuit described the test for determining whether an officer has reasonable suspicion to conduct an investigatory *Terry* detention as follows:

> An investigatory stop is reasonable if it is (1) justified at its inception and (2) reasonably related in scope to the circumstances which justified the interference in the first place.  A detention is justified at its inception if the specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion a person has or is committing a crime.  Nevertheless, the level of suspicion required for reasonable suspicion is considerably less than proof by a preponderance of the evidence or that required for probable cause.

*United States v. DeJear*, 552 F.3d 1196, 1200 (10th Cir. 2009) (citations omitted).

Defendant's argument that Sergeant Jeffries' initial detention of Defendant was unlawful rests on the assertion that Sergeant Jeffries' testimony that he heard a gun rack prior to detaining Defendant was not credible.  Defendant contends that inconsistencies in Sergeant Jeffries' testimony call into question his credibility as a witness.  During his testimony before the court, Sergeant Jeffries indicated that, prior to detaining Defendant, he had overheard Defendant say something to the effect of "I am going to take care of this." Tr. 13, 18.  In his earlier report of the incident, Sergeant Jeffries stated, "I heard a male voice respond, but could not make out what he said because I heard [a gun rack]."  Police Report, Ex. 1, 1 (Dkt. No. 35-1.)[1]

According to Defendant, this "blatant inconsistency clearly and serious[ly] undermines Sergeant Jeffries'[s] credibility."  Mem. Supp. Mot. to Suppress 7 (Dkt. No. 35.)  When

---

[1] In a hearing held on March 19, 2012, the government objected to Defendant's reference to the police report, arguing that it had never been admitted into evidence during the previous evidentiary hearing.  The court reserved its ruling on the objection, and now admits the police report at issue as evidence.  As described in the remainder of this opinion, however, the police report does not undermine the credibility of Sergeant Jeffries and is ultimately of little probative value in this context.

5

questioned about this apparent inconsistency on cross-examination, Sergeant Jeffries clarified that while he did not hear exactly what Defendant had said during this incident, he remembered that it was something to the effect of "I am going to take care of this." Tr. 28-29.

Defendant also argues that the evidence before the court makes clear that Sergeant Jeffries did not actually hear a gun rack, but instead "adopted that perception/position *after* he found the gun with the bullet in the chamber . . . ." Mem. Supp. Mot. to Suppress 7 (Dkt. No. 35) (emphasis in original). The evidence Defendant relies on to support this contention is that Sergeant Jeffries' own testimony shows that he took no steps to frisk Defendant or others at the scene of the incident before going to the car to look for the gun. According to Defendant, this proves that Sergeant Jeffries was not afraid that Defendant or anyone else had a gun or would pose a safety risk.

Defendant's attempts to undermine the credibility of Sergeant Jeffries fail. Sergeant Jeffries maintained throughout his testimony that he could not clearly make out what Defendant had said immediately prior to the detention at issue. While the absence of a description of what Defendant likely said in Sergeant Jeffries' post-incident report might raise questions as to the completeness of the report, the report does not reveal a "blatant inconsistency" as Defendant describes. Furthermore, other segments of Sergeant Jeffries' post-incident report are consistent with Sergeant Jeffries' testimony before the court, including his indication in the report that, prior to the detention, he had heard "the distinct sound of the slide of a semi automatic handgun being racked back and the slide slamming forward." Police Report, Ex. 1, 1 (Dkt. No. 35-1.)

Defendant's contention that Sergeant Jeffries' failure to frisk Defendant prior to looking in the car proves that Sergeant Jeffries never believed Defendant had a gun is also based on faulty reasoning. In his testimony, Sergeant Jeffries indicated that after detaining Defendant and

the others involved with the incident, he called for backup out of concern for his safety. Tr. 21. It was only after his backing units arrived and ensured that Defendant and the other suspects were contained with their hands on their head that Sergeant Jeffries went to the car to see if Defendant had hidden anything there. Tr. 23. Defendant and the other suspects, being contained by the backup officers with their hands on their heads, were not an immediate threat at that point, and there was no urgent need to frisk them for weapons. Under the circumstances and given the number of people involved, Sergeant Jefferies' response was reasonable and consistent with an effort to diffuse the tension until he could more fully investigate his concern about a gun.

     Additionally, Sergeant Jeffries had good cause to suspect that Defendant had hidden something in the car. Immediately after being ordered to put his hands where Sergeant Jeffries could see them, Defendant disobeyed that order and bent down as if to put something in the passenger compartment of the vehicle. Tr. 20. In reaction to Defendant disobeying his order, Sergeant Jeffries repeated the order by yelling to Defendant, "[S]how me your hands, show me your hands, show me your hands." Tr. 20. It is fair to infer from Sergeant Jeffries' reaction that he was concerned about Defendant's behavior at that moment, and likely suspected that Defendant had hidden something in the car. If Sergeant Jeffries' testimony were true that he had heard a gun rack prior to the detention, it would not be unreasonable for Sergeant Jeffries to have suspected that Defendant had hidden a gun in the car.

     Looking at the totality of the circumstances, it would not have been unreasonable for Sergeant Jeffries to have gone to the passenger compartment of the car to look for evidence of criminal activity as soon as his safety was ensured by the arrival of backup officers. Sergeant Jeffries' failure to frisk Defendant prior to looking in the car is not proof that Sergeant Jeffries did not hear a gun rack. The court finds Sergeant Jeffries' testimony to have been generally

credible, and finds his contention that he heard a gun rack prior to detaining Defendant to be reliable.

The court also finds that Sergeant Jeffries' reasonable suspicion that Defendant had been or was in the process of engaging in criminal activity was sufficient to justify the initial detention of Defendant, and that the scope of the initial detention was reasonably related to the circumstances which justified the interference in the first place.

Sergeant Jeffries was on gang patrol at the time of the incident and was aware that violent gang activity had taken place in the area in recent weeks. While patrolling the area, he witnessed Defendant hastily leave a bar, followed by a female companion and a group of individuals shouting at him. Upon further observation, he heard conversations between Defendant and his female companion that would allow him to infer that there was a conflict between Defendant and the other individuals who had followed him out of the bar. Sergeant Jeffries then heard a gun rack. When viewed collectively, all of these events would clearly allow Sergeant Jeffries to reasonably suspect that Defendant and the individuals who followed him out of the car intended to fight, and that the fight might involve the use of a gun.

The duration and scope of the initial detention was also reasonable. Sergeant Jeffries was the only officer involved in the initial stop of Defendant and the other individuals involved in the incident. Suspecting that one of the individuals had a racked gun in their possession, it was not unreasonable for Sergeant Jeffries to hold the individuals with their hands visible until backup officers could secure the scene for safety purposes.

It was also not unreasonable for Sergeant Jeffries to have continued to detain Defendant while he looked in the car for evidence of criminal activity. The investigatory detention of Defendant was motivated by Sergeant Jeffries' reasonable suspicion that Defendant had a gun

and intended to use it in an altercation with the individuals that had followed Defendant out of the bar. Having watched Defendant stoop down as if he were hiding something in the car after being ordered to put his hands where they could be seen, it was reasonable for Sergeant Jeffries to look in the car for evidence that might confirm his reasonable suspicions prior to letting Defendant go.

The initial detention of Defendant was justified by Sergeant Jeffries' reasonable suspicion that Defendant, or someone else involved in the incident, had a gun and intended to use it in an altercation. The continued detention of Defendant, up to his formal arrest, did not exceed the scope of the justification for the initial stop and, therefore, cannot be the basis of suppressing any of the evidence collected by Sergeant Jeffries and the other officers involved in this incident.

## II. SEARCH OF THE CAR

Defendant also argues that the evidence discovered during the search of the car should be suppressed because Sergeant Jeffries did not have probable cause to search the car. The government contends that there was no unlawful search of the vehicle and that Sergeant Jeffries found the gun in the vehicle because it was in plain view.

"The plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." *Harman v. Pollock,* 586 F.3d 1254, 1264 (10th Cir.2009) (citations omitted). The Tenth Circuit has applied a three-part test which must be satisfied by the government to justify application of the plain view doctrine to a seizure: "(1) the officer [must be] lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character [must be] immediately apparent - i.e., the officer ha[s] probable cause to believe the object was contraband or evidence

9

of a crime; and (3) the officer [must have] a lawful right of access to the object itself." *Id.* (citations omitted).

The government has satisfied its burden of showing that the plain-view doctrine justified the seizure of the gun Sergeant Jeffries discovered during the detention of Defendant. The incident that led to Defendant's arrest occurred in a parking lot open to the public. According to Sergeant Jeffries' testimony, Defendant had left the passenger side door of the car open and the passenger compartment could be viewed from outside the car. Tr. 23. Sergeant Jeffries testified that he could see the gun at issue sticking out from underneath the passenger seat of the car without passing into the car. Tr. 23-24.

Defendant disputes the credibility of Sergeant Jeffries' testimony that he discovered the gun in plain view, arguing again that his testimony is inconsistent with the police report he filed shortly after the incident. In his report, Sergeant Jeffries stated, "I could see in plain sight an open bottle of liquor that only had a small amount remaining in the bottle. I then looked under the front passenger seat right where I saw [Defendant] place an item. I could see a Glock handgun." Police Report, Ex. 1, 1 (Dkt. No. 35-1.) In his testimony before the court, Sergeant Jeffries stated, "As I looked down to underneath the passenger seat, I could see a Glock handgun." Tr. 23. Sergeant Jeffries also testified that "you could see [the gun] sticking out from the edge of the seat. . . . I didn't have to put my head into the car to look . . . you can see the gun right there under the seat . . . ." Tr. 24.

Sergeant Jeffries' testimony in court was not inconsistent with his earlier report on the issue of whether he discovered the gun in plain view or not. The fact that Sergeant Jeffries did not specifically state that he saw the gun in plain view in his report does not mean that his later

10

testimony that he could view the gun from a legal vantage point is unreliable.  The court finds Sergeant Jeffries' testimony that he viewed the gun in plain view to be credible.

Furthermore, the court finds that Sergeant Jeffries was in a lawful position when he discovered the gun under the passenger seat of the car.  Defendant has not disputed Sergeant Jeffries' testimony that he did not pass through the frame of the car when he looked under the seat and identified the gun.  The court sees no reason to doubt the veracity of Sergeant Jeffries' testimony on this issue.  Therefore, the government has met its burden of showing that Sergeant Jeffries was "lawfully in a position from which to view the object seized in plain view."

The government has also met its burden of proving the second element of the three-part plain-view test.  As discussed in more detail above, Sergeant Jeffries distinctly heard a gun rack just prior to his detention of Defendant and the other individuals involved in this incident.  Hearing the gun rack, in the context of everything else Sergeant Jeffries had witnessed, allowed Sergeant Jeffries to engage in an investigatory detention of Defendant on the basis of his reasonable suspicion that Defendant was involved in criminal conduct.  The evidence allowed Sergeant Jeffries to reasonably suspect that Defendant had a gun and intended to use it.  When Sergeant Jeffries discovered the gun in the vehicle, near the place where Defendant had earlier knelt down as if to hide something, it was reasonable for him to conclude that the gun may have been the same gun that he had heard rack earlier.  When all the evidence leading up to Sergeant Jeffries' discovery of the gun is considered in the aggregate, it is clear that Sergeant Jeffries had "probable cause to believe the object was contraband or evidence of a crime."

The final element of the three-part plain-view test is that an officer must have lawful access to the object itself in order to seize the object.  The Supreme Court has indicated that "[t]his [element] is simply a corollary of the familiar principle . . . , that no amount of probable

cause can justify a warrantless search or seizure absent 'exigent circumstances.'" *Horton v. California*, 496 U.S. 128, 137 n.7 (1990) (citations omitted). This means that even where an officer sees an object and has probable cause to believe the object is contraband or evidence of a crime, he cannot seize the object without a warrant unless an exception to the warrant requirement applies. *See Id*.

Under what is commonly referred to as the "automobile exception," an officer who has probable cause to believe that there is contraband or other evidence of a crime inside an automobile that is stopped on the road "may search it without obtaining a warrant." *United States v. Sparks*, 291 F.3d 683, 690 (10th Cir. 2002). The automobile exception applies even when a car has been immobilized and does not depend on an assessment of the "likelihood . . . that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant." *United States v. Vasquez-Castillo*, 258 F.3d 1207, 1212 (10th Cir. 2001).

When Sergeant Jeffries discovered the gun in question in plain view, he immediately had probable cause to believe the gun was evidence of criminal activity. Because the gun was discovered in an automobile, the automobile exception gave Sergeant Jeffries the right to enter the vehicle and seize the gun without a warrant. Thus, the third element of the plain-view test has also been met.

Because the gun in question was discovered by Sergeant Jeffries in plain view, there was no illegal search of the vehicle. Defendant's efforts to suppress the gun on the grounds that its seizure was the result of an unlawful search fail.

### III. SEARCH INCIDENT TO ARREST

Finally, Defendant seeks to suppress the cocaine that was found during a search of Defendant following his arrest.  Defendant claims that Sergeant Jeffries did not have probable cause for the arrest, and, therefore, the search of Defendant's person following the arrest was unlawful.  The government asserts that the evidence shows that Sergeant Jeffries had probable cause to arrest Defendant for drawing or exhibiting a dangerous weapon in an angry or threatening manner.

"Probable cause to arrest exists where, under the totality of the circumstances, a reasonable person would believe that an offense has been committed by the person arrested." *United States v. Martin*, 613 F.3d 1295, 1302 (10th Cir. 2010) (internal quotation marks and citation omitted).  "[P]robable cause does not require metaphysical certitude or proof beyond a reasonable doubt.  Probable cause is a matter of probabilities and common sense conclusions, not certainties." *Id*. (internal quotation marks and citations omitted).

Under Utah law, it is a class A misdemeanor to, while in the presence of two or more persons, "draw[] or exhibit[] a dangerous weapon in an angry and threatening manner or use[] a dangerous weapon in a fight or quarrel."  Utah Code Ann. § 76-10-506(2) (2012).  An individual does not draw or exhibit a dangerous weapon in a "threatening manner," however, if he or she merely possesses the weapon "without additional behavior which is threatening."  *See* Utah Code Ann. § 76-10-506(1).

Defendant's contention that Sergeant Jeffries did not have probable cause to arrest Defendant relies on the assertion that Sergeant Jeffries' testimony that he heard a gun rack prior to detaining Defendant is not credible.  As discussed above, the court does not agree with

13

Defendant's characterization of Sergeant Jeffries' credibility and has found that Sergeant Jeffries' testimony that he heard a gun rack was reliable.

Based on the totality of the evidence, the court finds that Sergeant Jeffries did have probable cause to arrest Defendant for drawing or exhibiting a dangerous weapon in an angry and threatening manner. Sergeant Jeffries testified that he observed Defendant walk quickly out of a bar, followed by a female companion who was grabbing at Defendant. Tr. 12. Sergeant Jeffries further testified that he heard the couple yelling, and believed that the two individuals were involved in a domestic dispute. Tr. 13. A short time later, Sergeant Jeffries witnessed another group of individuals leave the bar, following Defendant and shouting. Tr. 14. As Defendant and his female companion headed towards a vehicle parked in an adjacent parking lot, he continued to hear the couple shout at each other. Tr. 13, 15-17. After moving closer to the couple, Sergeant Jeffries testified that he could hear Defendant say something to the effect of "I'm going to take care of it" followed by the distinctive sound of a gun rack. Tr. 18. In his police report, Sergeant Jeffries described the gun rack as "the distinct sound of the slide of a semi automatic handgun being racked back and the slide slamming forward." Police Report, Ex. 1, 1 (Dkt. No. 35-1.)

As the court has already discussed, this evidence was sufficient to allow Sergeant Jeffries to detain Defendant and the others involved in the incident on the reasonable suspicion that Defendant had engaged in or was about to engage in criminal activity. During the course of the investigatory stop, Sergeant Jeffries discovered a Glock handgun in plain view sticking out from under the passenger seat of the car Defendant was standing by when Sergeant Jeffries initiated his detention of the individuals involved in this incident. Tr. 23-24. It was located near the area

where Defendant had stooped down as if to hide something after Defendant had been ordered by Sergeant Jeffries to put his hands where they could be seen. Tr. 19-20.

Based on this evidence, an objectively reasonable police officer would conclude that there was probable cause for the arrest of Defendant for drawing or exhibiting a dangerous weapon in an angry and threatening manner. The evidence shows that Defendant had been shouting at his female companion or the other individuals that followed him out of the bar. While Sergeant Jeffries testified that he never saw Defendant with a gun, he did testify that he heard the distinct sound of a gun rack coming from the area where Defendant was located. If Sergeant Jeffries' assessment that he heard a gun rack was correct, it is reasonable to assume that the gun was drawn. Sergeant Jeffries detained the Defendant and more than two other individuals after hearing the gun rack, and testified that it only took approximately three to five seconds to secure the individuals near the car while waiting for backup. Tr. 20-21.

While the evidence available to Sergeant Jeffries at the time of Defendant's arrest may not have been sufficient to prove, beyond a reasonable doubt, that Defendant committed a crime, the probable cause standard does not require proof beyond a reasonable doubt. There was evidence sufficient to allow Sergeant Jeffries to believe that Defendant had engaged in conduct that satisfied all the elements of a violation of Utah Code Ann. § 76-10-506(2).

Because Defendant's arrest was valid, the search of his person pursuant to the arrest was also lawful. *See United States v. Lasley*, No. 09-3336, 412 F. App'x 177, 180 (10th Cir. Feb. 14, 2011) (unpublished) (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973) ("[I]n the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."). The baggie of cocaine at issue was discovered during a search of Defendant's

15

person after he had been arrested.  Therefore, Defendant's motion to suppress this evidence is denied.

## **CONCLUSION**

For the reasons stated above, the court hereby DENIES Defendant's motion to suppress. (Dkt. No. 21.)

DATED this 3rd day of August, 2012.

BY THE COURT:

_Clark Waddoups_
Clark Waddoups
United States District Judge